**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

COMBE INCORPORATED,

        Plaintiff,

-against-

CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON, SUBSCRIBING TO POLICY NUMBER
B0509BOWCI1800672, NEWLINE HOLDINGS
UK LIMITED, LLOYD'S UNDERWRITER
SYNDICATE 1218 NWL, CASTEL
UNDERWRITING AGENCIES LTD., Trading as
Medical & Commercial International Underwriting,
SYNDICATES AT LLOYD'S 30061100118,
CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON, SUBSCRIBING TO POLICY NUMBER
LSR-XS-00375-18, MS AMLIN SYNDICATE 2001,
XL CATLIN SYNDICATE 2003, REN RE
SYNDICATE 1458, ATRIUM SYNDICATE 609,
EVEREST SYNDICATE 2786, EVEREST
INDEMNITY INSURANCE COMPANY,

        Defendants.

Index No. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Combe Incorporated ("Combe") brings this action against the Defendant Insurers

Certain Underwriters at Lloyd's of London, Subscribing to Policy Number

B0509BOWCI1800672, Newline Holdings UK Limited, Lloyd's Underwriter Syndicate 1218

NWL, Castel Underwriting Agencies Ltd., trading as Medical & Commercial International

Underwriting, Syndicates at Lloyd's 30061100118, Certain Underwriters at Lloyd's of London,

Subscribing to Policy Number LSR-XS-00375-18, MS Amlin Syndicate 2001, XL Catlin

Syndicate 2003, Ren Re Syndicate 1458, Atrium Syndicate 609, Everest Syndicate 2786, and

Everest Indemnity Insurance Company, Policy Number LS9EX00022-181 (collectively, "Insurers"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an insurance coverage dispute that arises out of Insurers' refusal to honor their respective coverage obligations under the policies they each sold to Combe and their failure to fulfill their respective duties to indemnify Combe against personal injury claims and lawsuits made on or after November 1, 2018, including for alleged bodily injuries arising out of Just For Men products (the "Underlying Claims").

2.      The policies at issue are claims-made policies, meaning that Insurers provide coverage for claims brought against Combe during the relevant policy period.

3.      Despite agreeing to pay Damages incurred by Combe (as defined in the policies and which include settlements) for claims alleging bodily injuries, and the Underlying Claims' settlement amounts exceeding each policy's respective attachment point, Insurers have wrongly refused to honor these obligations and have denied Combe coverage for the Underlying Claims.

## THE PARTIES

4.      Plaintiff Combe is a New York corporation with its principal place of business in New York.

5.      Upon information and belief, Defendant Certain Underwriters at Lloyd's of London, Subscribing to Policy Number B0509BOWCI1800672, is comprised of various syndicates of unknown citizenship that subscribed to the above-mentioned policy, including Newline Holdings UK Limited, Lloyd's Underwriter Syndicate 1218 NWL, Castel Underwriting Agencies Ltd., trading as Medical & Commercial International Underwriting, and Syndicates at Lloyd's 30061100118 (collectively, "Newline").

6. Upon information and belief, Defendant Newline Holdings UK Limited is a corporation formed under the laws of England and Wales, with its principal place of business in London, England.

7. Upon information and belief, Defendant Certain Underwriters at Lloyd's of London, Subscribing to Policy Number LSR-XS-00375-18, is comprised of various syndicates of unknown citizenship that subscribed to the above-mentioned policy, including MS Amlin Syndicate 2001, XL Catlin Syndicate 2003, Ren Re Syndicate 1458, Atrium Syndicate 609, and Everest Syndicate 2786 ("Life Science").

8. Upon information and belief, Defendant Everest Indemnity Insurance Company, Policy Number LS9EX00022-181 ("Everest"), is a Delaware corporation with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over each Defendant because each Defendant at all material times has conducted business within the State of New York including, but not limited to, selling and issuing insurance policies to New York businesses and insuring businesses in New York, including Combe.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Combe's claims occurred in this District.

## FACTUAL BACKGROUND

12.     Combe is an American success story.  Founded in 1949 by Ivan B. Combe, Combe is a third-generation, family-owned company based in White Plains, New York.  Combe grew from a startup company into a successful New York-based manufacturer and seller of personal care products.  It is an industry leader in men's hair color and grooming, and manufactures the Just For Men line of products.

## I.     THE INSURANCE POLICIES

13.     As a part of its prudent business practices and in recognition of its responsibilities to its employees, its community, and its customers, Combe purchases comprehensive general liability insurance coverage.

14.     Historically and up until November 1, 2018, Combe bought occurrence-based commercial general liability insurance, which covers bodily injury claims that take place during the policy period, regardless of when the claim or lawsuit is filed.

15.     However, in 2018, Combe's insurers decided not to renew the occurrence-based insurance program.  Combe was forced to move to a claims-made program.

16.     As relevant here, Insurers sold Combe commercial general liability policies that provide indemnity coverage for the Underlying Claims from at least November 1, 2018 through November 1, 2019.  This period was extended to November 1, 2024 pursuant to the applicable Batching Clause as described below.  (Collectively, the "Insurance Program" or the "Policies").

17.     The Insurance Program provides coverage on a claims-made basis, meaning that subject to the terms of the policies, coverage is available for claims made during the applicable policy period.

4

18.    The Insurance Program provides coverage for Combe products, including the Just For Men line of products.

19.    Insurers provide excess insurance coverage to Combe and pursuant to the terms of the policies, Insurers agreed to indemnify Combe for the Underlying Claims that reach their respective attachment points.

20.    Insurers each sold Combe separate policies with unique market reference and/or policy numbers, which are excess to the Lead Underlying Policy, policy number W2135D180201 (the "Beazley Policy").

21.    All policies follow and adopt the terms of the Beazley Policy, which serves as the Lead Underlying Policy, except as specifically provided by or endorsed to each excess policy.

22.    Combe and Beazley entered into a settlement agreement with respect to coverage for the Underlying Claims under the Beazley Policy, and the Beazley Policy has been exhausted.

**A.    The Beazley Policy**

24.    The Beazley Policy is a primary policy, with a $2,500,000 "Aggregate Deductible" and $5 million limit of liability.  **Exhibit 1**.

25.    The Policy provides coverage for Products/Completed Operations Liability:[1]

3. Products/Completed Operations Liability

The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses**, in excess of the Deductible, which the **Insured** shall become legally obligated to pay in respect of any **Claim** first made against any **Insured** during the **Policy Period** caused by an **Occurrence** arising out of the **Products/Completed Operations Liability Hazard** involving a **Nutraceutical** that takes place after the Retroactive Date and before the Expiration Date[.]

---

[1] Unless otherwise noted, capitalized and bolded terms herein are capitalized and bolded in the Policies.

26.    The Policy defines **Damages** in relevant part as "a civil monetary judgment, award or settlement."

27.    The Policy defines **Claim** as "a written demand or request for monetary damages or non-monetary relief or to toll or waive a statute of limitations against any of the **Insureds**, including any liability incurred for **Medical Expenses** or **Products Recall Expense**."

28.    The Policy defines **Occurrence** as "an event, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury**, **Personal Injury**, **Property Damage**, or **Advertising Injury** to one or more persons or entities."

29.    The Policy defines **Products/Completed Operations Liability Hazard,** in relevant part, as:

> **Bodily Injury** and/or **Property Damage** which arise out of the **Named Insured's Products**, or operations but only if the **Bodily Injury** and/or **Property Damage** occurs away from the premises owned by or rented to the **Insured**, and takes place:
>
> (1) after physical possession of such products has been relinquished; or
>
> (2) after such operations have been completed or abandoned.

30.    The Policy defines **Nutraceutical** as "a **Cosmetic** product, **Dietary Supplement, Personal Care Product**, or **Drug** that do not require a doctor's authorization for purchase by the general public."

31.    The Policy defines **Cosmetic** as "an article that is intended to be applied to the human body for altering appearance, beautifying, cleansing or promoting attractiveness, or as defined by the Federal Food, Drug, and Cosmetic Act."

32.    The Policy defines **Personal Care Product** as "a non-medical consumable product that is intended to be used in the topical care and grooming of the body or hair . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance . . . and includes

products specifically for use in such activities as . . . coloring/decorating, soothing, deodorizing, perfuming and styling."

33.    The Policy defines **Named Insured's Products** as:

> those goods or products (other than real property) developed, designed, created, manufactured, tested, licensed, marketed, disposed of, sold, handled or distributed by the **Named Insured** or by others trading under its name, including any container thereof (other than a vehicle) but shall not include a vending machine or any property, other than such container rented to or located for use of others but not sold.

34.    Item 5 of the Policy's Declaration page states in pertinent part:

> Item 5.        Deductible:
>
>               . . .
>
>               (c) **Products/Completed  Operations  Liability** –
>               Each Occurrence        $300,000

35.    The Policy includes a "Replace Deductible with Self-Insured Retention Endorsement" (the "SIR Endorsement") which provides:

> 1. Item 5. of the Declarations is deleted in its entirety and replaced with the following:
>
>    Item 5: **Self Insured Retention**: $300,000 Each Claim, including Claims Expenses
>
> 2. Solely with respect to any **Class Action**, **Multi-Plaintiff** or **Multidistrict Litigation (MDL)** which involves, or contains any allegations whatsoever of, an **Occurrence**; representation or warranty; which arises after the retroactive Date and before the Expiration Date of the **Policy Period**. Item 5. of the Declarations is deleted in its entirety and replaced with the following:
>
>    Item 5: **Self Insured Retention**: $750,000        Each Claim, including
>                                                         Claims Expenses for
>                                                         Class Action/Multi-
>                                                         Plaintiff/ Multidistrict
>                                                         Litigation (MDL)

36.     The SIR Endorsement deletes and replaces Clause VII. Deductible, with the following:

VII. SELF-INSURED RETENTION

The "Each **Claim** Self-Insured Retention" stated in Item 5. of the Declarations applies separately to each **Claim**. The Each **Claim** Self-Insured Retention shall be satisfied by monetary payments by the **Insured** of **Damages** and **Claims Expenses** resulting from each **Claim** which is covered under the terms and conditions of this **Policy**. Satisfaction of the Each **Claim** Self-Insured Retention is a condition precedent to the payment by the Underwriters of any amounts hereunder, and the Underwriters shall be liable only for amounts in excess of such Each **Claim** Self-Insured Retention subject to the Underwriters' total liability not exceeding the Limit of Liability stated in Item 4. of the Declarations. The **Insured** shall make direct payments within the Each **Claim** Self-Insured Retention to appropriate parties designated by the Underwriters.

All **Claims** arising out of the same, related or continuing **Occurrences** or negligent acts, errors or omissions or are part of a **Class Action**, **Multi-Plaintiff** or **Multidistrict Litigation (MDL)**, shall be deemed to be a single **Claim**.

37.     The Policy also includes an "Aggregate Deductible Endorsement" which further amends the policy language:

1.  Item 5. of the Declarations is amended by the addition of the following:

    **Aggregate Deductible**                    $2,500,000

2.  Clause **VII., DEDUCTIBLE**, is amended by the addition of the following:

    Subject to the each **Claim** Deductibles stated in of [sic] Item 5. of the Declarations, the Aggregate Deductible stated in paragraph 1. above, is the most the **Insured** will be responsible to pay for **Damages** and **Claims Expenses** during the **Policy Period.**

38.      The Policy also includes a "Maintenance Retention Endorsement" which provides:

8

1. In the event of exhaustion of the Self-Insured Retention solely by payment of any **Damages** and **Claims Expenses** resulting from each **Claim** which is covered under the terms and conditions of this **Policy**, any subsequent coverage provided under this **Policy** will be subject to a Maintenance Retention of $25,000 each and every **Claim** as a condition precedent to the payment by Underwriters of any amounts hereunder.

2. The Underwriters shall be liable only for the amounts in excess of such Maintenance Retention subject to the Underwriter's Limit of Liability in the Declarations. The **Insured** shall make direct payments within the Maintenance Retention to appropriate parties designated by the Underwriters. . . . .

39.    The Policy also includes a Batching Clause which provides in relevant part:

C. (1) All **Claims** for **Bodily Injury** or **Property Damage** under Insuring Agreement I.A.3. **Products/Completed Operations Liability** which arise out of one lot of goods, batch, package or run of the **Named Insured's Products** and are attributable to a single, direct cause shall be deemed to be one **Claim** and deemed to have been made at the time of such notice or the first of the related **Claims** if:

(i) the **Occurrence** which causes or is alleged to cause injury or damage affects two or more persons and is attributable to a single, direct cause;

(ii)    the first relevant **Occurrence** occurs after the Retroactive Date and before the Expiration Date of the **Policy Period**;

(iii)    the first of all such related **Claims**:

(a) has been made within the **Policy Period**; or

(b) directly relates to a **Circumstance** notified within the **Policy Period**; and

(iv)    the **Named Insured** has requested in writing prior to, or within 120 days after, the Expiration Date of the **Policy Period** that the Underwriters agree to such designation as one **Claim**, such consent not to be unreasonably withheld.

40.    The Batching Clause plainly states that Insurers' consent and agreement to batch certain claims cannot be "unreasonably withheld."

9

41.    The Batching Clause further states, "If the Underwriters agree to designate such **Claims** as one **Claim**, then any later related **Claims** which are made and notified within five (5) years of the Expiration Date of the **Policy Period** are hereby covered under this **Policy** as that one **Claim**, and will be deemed to have been notified at the date of the first designated **Claim** or notification and are subject to one Deductible and one each **Claim** Limit."

42.    The Policy attaches an endorsement titled, "Class Action, Multi-Plaintiff and MDL Exclusion" (the "Beazley Exclusion").

43.    The Beazley Exclusion states that the Policy:

> does not apply to any **Damages** or **Claims Expenses** incurred with respect to (a) any **Claim** arising out of or related to an **Existing Class Action**, **Multi-Plaintiff** or **Multidistrict Litigation (MDL)**, or (b) a **Class Action**, **Multi-Plaintiff** or **Multidistrict Litigation (MDL)** which involves, or contains any allegations whatsoever of, an Occurrence; representation or warranty; which arises prior to the Retroactive Date of this Policy.

44.    The Beazley Exclusion defines Existing as "any **Class Action**, **Multi-Plaintiff** or **Multidistrict Litigation (MDL)** that has been filed as of November 01, 2018."

45.    The Beazley Exclusion defines **Class Action** as:

> any claim or proceedings:
>
> (1)  certified as a class action or purporting to be a class action;
>
> (2)  by or on behalf of five or more persons, whether or not such persons are represented by one or more legal counsel;
>
> (3)  by or on behalf of one to four persons, if any of such persons is making a pattern or practice of, or systemic wrongful act allegation(s) and is seeking monetary relief on behalf of a class or group of complainants in order to resolve such proceeding, whether or not such persons are represented by one or more legal counsel; or . . . .

46.     The Beazley Exclusion defines **Multi-Plaintiff** as "a complaint brought by or on behalf of two or more plaintiffs, with a common question of law or fact."

47.     The Beazley Exclusion defines **Multidistrict Litigation (MDL)** as "the procedure that permits civil lawsuits pending in different federal district courts, with at least one common question of fact, to be transferred and consolidated for pretrial proceedings before one judge."

48.     The Beazley Policy contains a Retroactive Limitation Clause added by endorsement, which states:

> In consideration of the premium charged for the **Policy**, it is hereby understood and agreed that there shall be no liability hereunder in respect of any **Claim**:
>
> (a)   arising out of any circumstance, offense or occurrence which has been notified to the insurer of any other Policy of insurance, self insurance or trust effected prior to the inception of this **Policy**;
>
> (b)   arising out of any circumstance, offense or occurrence known to the **Insured** prior to the inception hereof and not disclosed to the Underwriters at inception;
>
> (c)   arising out of any prior or pending litigation as of the inception of this **Policy** or derived from the same facts and/or circumstances alleged in such prior or pending litigation.

### B.     The Newline Policy

49.     Newline sold Combe Policy Number B0509BOWCI1800672 (the "Newline Policy"). **Exhibit 2**.

50.     The Newline Policy is a first-layer excess policy that sits above the Beazley Policy.  The Newline Policy incorporates and follows the Beazley Policy in all material respects.

51.     The Newline Policy has a $15 million limit of liability.

52.     The Newline Policy responds after the Beazley Policy is exhausted.

C.      **The Life Science Policy**

53.      Life Science sold Combe Policy Number LSR-XS-00375-18 (the "Life Science Policy").  **Exhibit 3**.

54.      The Life Science Policy is part of the second-layer excess coverage and sits above the Beazley and Newline Policies, alongside the Everest Policy.  It incorporates and follows the Beazley Policy in all material respects.

55.      The Life Science Policy has a $10 million limit of liability and provides a 50% share of the $20 million in limits provided by the second-layer excess policies.

56.      The Life Science Policy is triggered after the underlying policies are exhausted.

D.      **The Everest Policy**

57.      Everest sold Combe Policy Number LS9EX00022-181 (the "Everest Policy").  **Exhibit 4**.

58.      The Everest Policy is part of the second-layer excess coverage and sits above the Beazley and Newline Policies, alongside the Life Science Policy.  It incorporates and follows the Beazley Policy in all material respects.

59.       The Everest Policy has a $10 million limit of liability and provides a 50% share of the $20 million in limits provided by the second-layer excess policies, along with the Life Science Policy.

60.      The Everest Policy is triggered after the underlying policies are exhausted.

II.      **INSURERS' DENIAL OF COVERAGE**

61.      Combe paid all premiums due under the Policies.

62.      Combe has fully performed all obligations under the Policies and to the extent required by law.

12

63.    Combe sent Insurers notice of the Underlying Claims.

64.    The Underlying Claims trigger coverage under the Policies.

65.    Combe requested that Insurers attend various mediations and/or settlement negotiations relating to the Underlying Claims, and Insurers refused to attend or otherwise refused to meaningfully engage at the mediations and during negotiations.

66.    The Underlying Claims were settled and Combe had no choice but to pay the settlements out of pocket given that Insurers wrongly denied coverage.

67.    Insurers have failed to fulfill their obligations under the Policies and have refused to provide Combe with indemnity coverage for the Underlying Claims.

68.    The Newline, Everest and Life Science Policies provide coverage for Just For Men-related claims along with other Combe products, subject to their respective policy terms.

69.    Despite the Beazley Exclusion and Retroactive Limitation Clause not applying to the Underlying Claims, Defendant Insurers have denied coverage on those bases.

70.    No defenses to coverage apply under the respective Policies, and/or Insurers have waived all defenses to coverage under the Policies, or such defenses are subject to estoppel.

71.    Further, in compliance with the Policies, on January 6, 2020, Combe requested in writing that Insurers agree to designate certain claims as batches and provided Insurers with the basis for this request.

72.    Insurers have unreasonably withheld consent and have denied Combe's request to apply the Batching Clause.

73.    On or about December 2024, Combe entered into a settlement with Beazley with respect to coverage for the Underlying Claims and the Beazley Policy has been exhausted.

13

74. The settlements in the Underlying Claims exceed the Beazley Policy limit of liability, along with that of the Newline Policy.

75. The Newline Policy's limit of liability is exceeded even without application of the Batching Clause.

**FIRST CAUSE OF ACTION**
**(DECLARATORY JUDGMENT – DUTY TO INDEMNIFY: NEWLINE)**

76. Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

77. Combe has incurred substantial indemnity amounts in connection with the settlements of the Underlying Claims.

78. The Newline Policy provides insurance coverage for the amounts incurred by Combe in connection with the settlements of the Underlying Claims.

79. Combe is entitled to have the Newline Policy interpreted in a reasonable manner that maximizes insurance coverage.

80. The amounts incurred by Combe in connection with the Underlying Claims exceed the limits of the Beazley Policy, and exceed the Newline Policy's attachment point.

81. By reason of the foregoing, an actual and justiciable controversy exists between Combe and Newline regarding its duty to indemnify Combe in connection with the Underlying Claims under the Newline Policy.

82. Combe is entitled to a judgment declaring that Newline is obligated under the Newline Policy and applicable law to indemnify Combe for the amounts it incurred in connection with the settlements reached in the Underlying Claims that implicate Newline's limits.

**SECOND CAUSE OF ACTION**
**(DECLARATORY JUDGMENT – DUTY TO INDEMNIFY: EVEREST)**

83.    Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

84.    Combe has incurred substantial amounts in connection with the settlements of the Underlying Claims.

85.    The Everest Policy provides insurance coverage for the amounts incurred by Combe in connection with the settlements of the Underlying Claims.

86.    Combe is entitled to have the Everest Policy interpreted in a reasonable manner that maximizes insurance coverage.

87.    The amounts incurred by Combe in connection with the Underlying Claims exceed the limits of the Beazley and Newline Policies, and exceed the Everest Policy's attachment point.

88.    By reason of the foregoing, an actual and justiciable controversy exists between Combe and Everest regarding its duty to indemnify Combe in connection with the Underlying Claims under the Everest Policy.

89.    Combe is entitled to a judgment declaring that Everest is obligated under the Everest Policy and applicable law to indemnify Combe for the amounts it incurred in connection with the settlements reached in the Underlying Claims that implicate Everest's limits.


**THIRD CAUSE OF ACTION**
**(DECLARATORY JUDGMENT – DUTY TO INDEMNIFY: LIFE SCIENCE)**

90.    Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

15

91.    Combe has incurred substantial amounts in connection with the settlements of the Underlying Claims.

92.    The Life Science Policy provides insurance coverage for the amounts incurred by Combe in connection with the settlements of the Underlying Claims.

93.    Combe is entitled to have the Life Science Policy interpreted in a reasonable manner that maximizes insurance coverage.

94.    The amounts incurred by Combe in connection with the Underlying Claims exceed the limits of the Beazley and Newline Policies, and exceed the Life Science Policy's attachment point.

95.    By reason of the foregoing, an actual and justiciable controversy exists between Combe and Life Science regarding its duty to indemnify Combe in connection with the Underlying Claims under the Life Science Policy.

96.    Combe is entitled to a judgment declaring that Life Science is obligated under the Life Science Policy and applicable law to indemnify Combe for the amounts it incurred in connection with the settlements reached in the Underlying Claims that implicate Life Science's limits.

**FOURTH CAUSE OF ACTION**
**(DECLARATORY JUDGMENT – PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE: NEWLINE, EVEREST, AND LIFE SCIENCE)**

97.    Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

98.    The Policies provide coverage for Products/Completed Operations Liability which states:

3.    Products/Completed Operations Liability

16

> The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses**, in excess of the Deductible, which the **Insured** shall become legally obligated to pay in respect of any **Claim** first made against any **Insured** during the **Policy Period** caused by an **Occurrence** arising out of the **Products/Completed Operations Liability Hazard** involving a **Nutraceutical** that takes place after the Retroactive Date and before the Expiration Date.

99. An actual and justiciable controversy exists between Combe and Insurers concerning their respective rights and obligations under the Products/Completed Operations Liability Coverage with respect to coverage for the Underlying Claims.

100. Combe is entitled to a judgment against Insurers declaring that the Underlying Claims trigger coverage under the Policies' Products/Completed Operations Liability Coverage.

### FIFTH CAUSE OF ACTION
### (BREACH OF CONTRACT – INDEMNITY: NEWLINE)

101. Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

102. The Newline Policy is a valid, binding, and enforceable contract between Combe and Newline.

103. Combe performed and discharged all of its obligations under the Newline Policy.

104. Under the Newline Policy, Newline is obligated to indemnify Combe for amounts incurred by Combe in connection with the settlements of the Underlying Claims.

105. Newline has denied Combe's requests for coverage for the Underlying Claims and has refused to honor its promises. In denying or constructively denying coverage for the amounts incurred by Combe in connection with the Underlying Claims, Newline breached the Newline Policy.

106. As a result of its breach, Newline is liable for damages, including the amounts incurred by Combe in connection with the Underlying Claims, and any other amounts to be

17

proven at trial, together with the costs and disbursements incurred by Combe in this action, including, but not limited to, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### (BREACH OF CONTRACT – INDEMNITY: EVEREST)

107.    Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

108.    The Everest Policy is a valid, binding, and enforceable contract between Combe and Everest.

109.    Combe performed and discharged all of its obligations under the Everest Policy.

110.    Under the Everest Policy, Everest is obligated to indemnity Combe for amounts incurred by Combe in connection with the settlements of the Underlying Claims.

111.    The underlying indemnity obligations exceed the limits of the Beazley and Newline Policies, and exceed the Everest Policy's attachment point.

112.    Everest has denied Combe's requests for coverage for the Underlying Claims and has refused to honor their promises.  In denying or constructively denying coverage for the amounts incurred by Combe in connection with the Underlying Claims, Everest breached the Everest Policy.

113.    As a result of their breach, Everest is liable for damages, including the amounts incurred by Combe in connection with the Underlying Claims, and any other amounts to be proven at trial, together with the costs and disbursements incurred by Combe in this action, including, but not limited to, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### (BREACH OF CONTRACT – INDEMNITY: LIFE SCIENCE)

114.    Combe repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

115.    The Life Science Policy is a valid, binding, and enforceable contract between Combe and Life Science.

116.    Combe performed and discharged all of its obligations under the Policies.

117.    Under the Life Science Policy, Life Science is obligated to indemnity Combe for amounts incurred by Combe in connection with the settlements of the Underlying Claims.

118.    The underlying indemnity obligations exceed the limits of the Beazley and Newline Policies, and exceed the Life Science Policy's attachment point.

119.    Life Science has denied Combe's requests for coverage for the Underlying Claims and has refused to honor its promises.  In denying or constructively denying coverage for the amounts incurred by Combe in connection with the Underlying Claims, Life Science breached the Life Science Policy.

120.    As a result of its breach, Life Science is liable for damages, including the amounts incurred by Combe in connection with the Underlying Claims, and any other amounts to be proven at trial, together with the costs and disbursements incurred by Combe in this action, including, but not limited to, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### PRAYER FOR RELIEF

**WHEREFORE**, Combe demands judgment against Insurers as set forth below:

1.    On the First Cause of Action (Declaratory Judgment), a declaration by this Court in favor of Combe that, pursuant to the terms of the Newline Policy, Newline is obligated to

19

indemnity Combe for the amounts it incurred in connection with the settlements reached in the Underlying Claims that implicate Newline's limits.

2.     On the Second Cause of Action (Declaratory Judgment), a declaration by this Court in favor of Combe that, pursuant to the terms of the Everest Policy, Everest is obligated to indemnity Combe for the amounts it incurred in connection with the settlements reached in the Underlying Claims that implicate Everest's limits.

3.     On the Third Cause of Action (Declaratory Judgment), a declaration by this Court in favor of Combe that, pursuant to the terms of the Life Science Policy, Life Science is obligated to indemnity Combe for the amounts it incurred in connection with the settlements reached in the Underlying Claims that implicate Life Science's limits.

4.     On the Fourth Cause of Action (Declaratory Judgment), a declaration by this Court in favor of Combe that the Underlying Claims trigger coverage under the Policies' Products/Completed Operations Liability Coverage.

5.     On the Fifth Cause of Action (Breach of Contract), a determination by this Court in favor of Combe and against Newline awarding money damages, and any other amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees.

6.     On the Sixth Cause of Action (Breach of Contract), a determination by this Court in favor of Combe and against Everest awarding money damages, and any other amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees.

7.     On the Seventh Cause of Action (Breach of Contract), a determination by this Court in favor of Combe and against Life Science awarding money damages, and any other amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees.

8.     With respect to all Causes of Action:

20

a.   an award of reasonable attorneys' fees and costs to Combe;

b.   an order requiring Insurers to repay Combe for the costs of the suit incurred herein;

c.   an award of pre-judgment and post-judgment interest and costs, as provided by law; and

d.   such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Combe hereby demands a trial by jury on all issues so triable.


Dated: July 30, 2026
   New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

BY:   */s/ Janine Stanisz*
       31 West 52nd Street
       New York, New York 10019
       (212) 858-1016 (telephone)
       janine.stanisz@pillsburylaw.com
       alexander.hardiman@pillsburylaw.com

       *Attorneys for Plaintiff Combe Incorporated*

21